IC                                                                                    TG

**FILED**

JUN 21 2024 TG

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

HYPERTHERM, INC., a New Hampshire
corporation,

      *Plaintiff,*

      v.

THE INDIVIDUALS, PARTNERSHIPS
AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED IN
SCHEDULE "A",

      *Defendants.*

**Case No.: 1:24-cv-05198**
**Judge Elaine E. Bucklo**
**Magistrate Judge Jeffrey Cole**

DEMAND FOR JURY TRIAL

### VERIFIED COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff, Hypertherm, Inc. ("Hypertherm" or "Plaintiff") by and through its undersigned counsel, brings this action for patent infringement against the Individuals, Partnerships and Unincorporated Associations Identified in Schedule "A" hereto (the "Defendants") who are promoting, selling, offering for sale and distributing goods that infringe Plaintiff's U.S. Patent Nos. 8,115,136, 8,541,712, and 8,546,718 (collectively, the "Patents-in-Suit") within this district through various Internet based e-commerce stores using the seller identities as set forth on Schedule "A" hereto (the "Seller IDs"), and in support of its claims, alleges as follows:

### INTRODUCTION

1.     This action relates to patent-protected consumable replacement parts for use with Plaintiff's plasma arc cutter products.

2.     One such consumable replacement product sold by Plaintiff is an electrode with part number 220842, depicted below, that practices the claims of the Patents-in-Suit (the "Genuine

1

Product"). *See* https://www.hypertherm.com/en-US/hypertherm/powermax/electrode-duramax-and-duramax-lock-10-105-a/.



3.      Defendants seek to capitalize upon Plaintiff's proprietary patented technology by offering for sale and selling unauthorized and unlicensed Infringing Products (as defined below) in the United States that practice one or more claims of each of the Patents-in-Suit.

4.      An example of one of the Infringing Products, which is marketed using the same part number as Plaintiff's part number 220842, is depicted below next to an image of Plaintiff's Genuine Product and representative Figure 3A from the Patents-in-Suit:



**Infringing Product**            **Plaintiff Genuine Product**



FIG. 3A

**Figure 3A of Patents-in-Suit**

5.     On information and belief, Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their operations. Such efforts include, *inter alia*, changing the names of their Internet based e-commerce stores multiple times, opening new stores, and helping others open stores.

6.     Defendants' sales of the Infringing Products directly compete with the sale of Genuine Products and cause direct harm to Plaintiff in lost sales and indirect harm from the loss of goodwill associated with Defendants' sales of low-quality Infringing Products and poor customer service regarding those sales.

7.     Plaintiff has been, and continues to be, irreparably harmed by Defendants' infringement of the Patents-in-Suit. Plaintiff, therefore, seeks injunctive relief damages to halt such infringement and irreparable harm, in addition to damages.

## PARTIES

8.     Plaintiff is a corporation organized and existing under the laws of New Hampshire, with its principal place of business at 21 Great Hollow Road, Hanover, NH, 03755.

9.     Defendants are all believed to be individuals, partnerships, and unincorporated business associations of unknown makeup who, upon information and belief, either reside or

operate fully in foreign jurisdictions, redistribute products from the same or similar sources in those locations, and/or ship their goods from the same or similar sources in those locations to shipping and fulfillment centers within the United States to redistribute their Infringing Products from those locations.

10.     Defendants conduct their operations and sell the Infringing Products through fully interactive commercial websites hosted on various Internet based e-commerce stores including, but not limited to, Amazon.com, Walmart.com, Ebay.com and other online retail platforms ("Infringing Webstores"). Upon information and belief, Defendants have registered, established or purchased, and maintained their Seller IDs.

11.     Each Defendant targets consumers in the United States, including the State of Illinois, and has offered to sell and, on information and belief, has sold and continues to sell Infringing Products that practice the claims of the Patents-in-Suit to consumers within the United States, including the State of Illinois and the Northern District of Illinois. For example, the Infringing Products may be purchased by Illinois residents using the Amazon online order system and delivered by an Amazon delivery vehicle in this district.

12.     Through their operation of the Infringing Webstores, Defendants are directly and personally engaging in the importation, offer for sale, and sale of Infringing Products as alleged, oftentimes as partners and/or suppliers. Upon information and belief, Defendants on Amazon.com may intentionally or otherwise conceal their identities and the full scope of their infringing operations to deter Plaintiff from learning Defendants' true identities and the exact interworking of Defendants' infringing acts.

13.     Upon information and belief, Defendants may have engaged in fraudulent conduct with respect to the registration of the Seller IDs by providing false and/or misleading information to the Internet based e-commerce platforms or domain registrar where they offer to sell and/or sell during the registration or maintenance process related to their respective Seller IDs.

14.     Upon information and belief, many Defendants registered and maintained their Seller IDs for the sole purpose of engaging in illegal infringing activities.  Upon information and belief, Defendants will likely continue to register or acquire new seller identification aliases for the purpose of selling and offering for sale Infringing Products unless preliminarily and permanently enjoined.

## JURISDICTION AND VENUE

15.     The Court has subject matter jurisdiction over the Plaintiffs' claims for patent infringement because this action arises under the Patent Laws of the United States, 35 U.S.C. § 101, *et seq.*  This Court's jurisdiction over this action is proper under 35 U.S.C. § 271, *et seq.*, 28 U.S.C. § 1331 (federal question jurisdiction), and § 1338 (jurisdiction over patent actions).

16.     Defendants have personally availed themselves of the privilege of conducting business in the United States by importing and selling Infringing Products for use with Plaintiff's products on Amazon.com and other Infringing Webstores.  On information and belief, Defendants import Infringing Products from China and sell them to individuals throughout the United States and in this District.

17.     The Court has personal jurisdiction over Defendants pursuant to Federal Rule of Civil Procedure 4(k)(2). On information and belief, Defendants are not subject to jurisdiction in any state's court of general jurisdiction. Defendants regularly conduct, transact and/or solicit

business in this Judicial District, and/or derive substantial revenue from business transactions in this Judicial District and/or otherwise avail themselves of the privileges and protections of the laws of the State of Illinois such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process.

18.     As alleged herein, Defendants market the Infringing Products to a nationwide audience and stand ready and willing to do business with Illinois residents. Defendants market and sell infringing products to residents of all fifty states, including Illinois, through the Infringing Webstores. Defendants also move the Infringing Products along a stream of commerce destined for retail sale throughout the United States, including Illinois, through third party shipping and fulfillment centers.

19.     In addition, Defendants' infringement causes injury to Plaintiff in Illinois and in this Judicial District such that Defendants should reasonably expect such actions to have consequences in Illinois and this Judicial District.

20.     Moreover, upon information and belief, Defendants are systematically directing and/or targeting their business activities at consumers in the U.S., including those in Illinois, and in this Judicial District, through the Infringing Webstores as well as any and all as yet undiscovered accounts with Internet based e-commerce stores held by or associated with Defendants, their respective officers, employees, agents, servants, and persons in active concert or participation with any of the foregoing. Consumers in the U.S., including Illinois (and more particularly, in this Judicial District), can view the Infringing Webstores that each Defendant operates, can communicate with Defendants regarding Defendants' listings for Infringing Products, can place orders for such Infringing Products, can purchase Infringing Products for delivery in the U.S., and

can receive associated invoices.

21.    None of the Defendants are residents in the United States and thus venue is proper in this Judicial District pursuant to 28 U.S.C. §§ 1391(c)(3).

## **JOINDER IS PROPER**

22.    All the Infringing Products of each Defendant have the identical structure and infringe the Patents-in-Suit for identical reasons.

23.    All Defendants are engaging in the same systematic approach of establishing online storefronts to redistribute illegal products from the same or similar sources while maintaining financial accounts that the Defendants can easily conceal to avoid liability for their actions.

24.    On information and belief, Defendants are an interrelated group of infringers, who create numerous Infringing Webstores and design these stores to appear to be selling genuine versions of the Genuine Product, while in fact they are selling inferior, unauthorized imitations of the Genuine Product. The Infringing Webstores share unique identifiers, such as the following: common design elements, the same Infringing Products that they offer for sale, similar Infringing Product descriptions, the same product photographs and other images, the same product numbers, the same placement of product numbers and manner of imprinting product numbers, the same or substantially similar shopping cart platforms, the same accepted payment methods, the same check-out methods, the same dearth of contact information, identically or similarly priced infringing products, and similar discounted prices with respect to comparable Genuine Products.

25.    On information and belief, all Defendants reside in, or conduct all operations in, China.

26.    On information and belief, all Defendants have the same or closely related sources

for their Infringing Products with some sourcing from the same upstream source and others sourcing from downstream sources who obtain Infringing Products from the same upstream sources.

27.     All Defendants take advantage of the anonymity and mass reach the internet affords to sell infringing goods across international borders and violate Plaintiff's patent rights with impunity.

28.     All Defendants have registered their Seller IDs with a small number of online platforms for the purpose of engaging in infringement.

29.     All Defendants use payment and financial accounts associated with their online storefronts or the online platforms where their online storefronts reside.

30.     All Defendants use their payment and financial accounts to accept, receive, and deposit profits from their infringing activities.

31.     All Defendants can easily and quickly transfer or conceal their funds in their payment and financial accounts to avoid detection and liability in the event the Plaintiff's enforcement efforts are discovered, or Plaintiff obtains a monetary award.

32.     All Defendants understand that their ability to profit through anonymous internet stores is enhanced as their numbers increase, even though they may not all engage in direct communication or coordination.

33.     On information and belief, many of the Defendants are operating multiple internet storefronts and online marketplace seller accounts using different Seller IDs than those listed on Schedule "A." As a result, on information and belief, there are more Seller IDs than there are Defendants, a fact that will emerge in discovery.

34.     All Defendants' business names, Seller ID's, associated payment accounts, and any other alias seller identification names or e-commerce stores used in connection with the sale of the Infringing Products, are essential components of Defendants' online activities and are one means by which Defendants further their infringement scheme and cause harm to Plaintiff.

35.     By selling Infringing Products, all Defendants drive Internet consumer traffic to their e-commerce stores operating under the Seller IDs, thereby increasing the value of the Seller IDs and decreasing the size and value of Plaintiff's legitimate marketplace and intellectual property rights at Plaintiff's expense.

36.     The natural and intended by-product of Defendants' logically related actions is the erosion and destruction of the goodwill associated with Plaintiff's intellectual property rights and Genuine Products and the reduction of Plaintiff's sales of Genuine Products to the benefit of Defendants.

37.     On information and belief, Defendants engaged in fraudulent conduct registering their Infringing Webstores by providing false, misleading, and/or incomplete information to Amazon and other facilitators of the Infringing Webstores.

38.     On information and belief, Defendants have anonymously registered and maintained aliases to prevent discovery of their true identity and the scope of their e-commerce operation.

39.     On information and belief, Defendants also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received. Rogue servers are notorious for ignoring take down demands sent by brand owners.

40.     Joinder of the multiple Defendants listed in Schedule "A" attached hereto is

permitted pursuant to 35 U.S.C. § 299 as the Defendants are all offering for sale the same or similar infringing product and this case will involve common questions of fact to all Defendants and the Defendants' infringing acts arise out of the same transaction, occurrence, or series of transactions or occurrences related to the making, using, importing into the United States, offering for sale, or selling of the same or similar accused product or process as discussed in ¶¶ 22-39 above.

41.     Joinder of the multiple Defendants listed in Schedule "A" attached hereto serves the interests of convenience and judicial economy, which will lead to a just, speedy, and inexpensive resolution for Plaintiff, Defendants, and this Court.

42.     Joinder of the multiple Defendants listed in Schedule "A" attached hereto will not create any unnecessary delay nor will it prejudice any party. On the other hand, severance is likely to cause delays and prejudice Plaintiff and Defendants alike.

**THE PATENTS-IN-SUIT**

43.     Plaintiff is the owner of all right, title, and interest in and to U.S. Patent No. 8,115,136 ("the '136 Patent"), titled "Electrode for a Contact Start Plasma Arc Torch and Contact Start Plasma Arc Torch Employing Such Electrodes." The '136 Patent was duly issued by the United States Patent and Trademark Office on February 14, 2012, and is enforceable. A copy of the '136 Patent is attached hereto as Exhibit A.

44.     Plaintiff is the owner of all right, title, and interest in and to U.S. Patent No. 8,541,712 ("the '712 Patent"), titled "Electrode for a Contact Start Plasma Arc Torch and Contact Start Plasma Arc Torch Employing Such Electrodes." The '712 Patent was duly issued by the United States Patent and Trademark Office on September 24, 2013, and is enforceable. A copy of the '712 Patent is attached hereto as Exhibit B.

45. Plaintiff is the owner of all right, title, and interest in and to U.S. Patent No. 8,546,718 ("the '718 Patent"), titled "Electrode for a Contact Start Plasma Arc Torch and Contact Start Plasma Arc Torch Employing Such Electrodes." The '718 Patent was duly issued by the United States Patent and Trademark Office on October 1, 2013, and is enforceable. A copy of the '718 Patent is attached hereto as Exhibit C.

46. Each of the Patents-in-Suit are related and the claims of the Patents-in-Suit claim priority to U.S. Provisional Patent Application No. 60/774,451, filed February 17, 2006 and titled "Electrode for a Contact Start Plasma Arc Torch and Contact Start Plasma Arc Torch Employing Such Electrodes."

47. Pursuant to 35 U.S.C. § 287(a), Plaintiff has provided notice of the Patents-in-Suit to potential infringers and the public, including Defendants, by marking its product labels with the word "patent," together with an address of a posting on the Internet (www.hypertherm.com/patents) that associates patented articles, including the Genuine Products, with the number of each corresponding patent, including the Patents-In-Suit, listing the patents both by product and by part number.

48. Material processing apparatuses, such as plasma arc torches and lasers, are widely used in the cutting and marking of metallic materials known as workpieces. A plasma arc torch generally includes a torch body, an electrode mounted within the body, a nozzle with a central exit orifice, electrical connections, passages for cooling and arc control fluids, a swirl ring to control the fluid flow patterns, and a power supply.

49. Certain components of the material processing apparatus deteriorate over time from use. These consumable components include, in the case of a plasma arc torch, the electrode, swirl

ring, nozzle, and shield. Furthermore, in the process of starting the torch various consumable components can become misaligned.

50.     The inventions claimed in the Patents-in-Suit relate to, amongst other things, an electrode for use in a contact start plasma arc torch that is longer-lasting, that reduces wear on components of the torch that are not designed as consumables, and that helps provide alignment of torch components during torch operation.

51.     Figure 3A of the '136 Patent reproduced below depicts one embodiment of the inventions set forth in the Patents-in-Suit. The Infringing Products are near identical copies of the electrode depicted in Figure 3A.



FIG. 3A

**BACKGROUND**

**Hypertherm**

52.     Plaintiff is a worldwide leader in the technological development, manufacturing, and marketing of plasma arc cutting systems and replacement parts. Since its founding in 1968, Plaintiff has contributed pioneering advances to metal cutting technologies. The company has nearly 300 United States patents protecting its innovations from copying by others.

53.     Plaintiff sells, amongst other devices, plasma arc cutter devices such as the

Powermax65 depicted below in the United States. *See* https://www.hypertherm.com/en-US/resources/resources-by-product/?productcode=POWERMAX65.



54.    The Powermax65 plasma arc cutter utilizes several consumable parts during operation and Plaintiff sells genuine replacement products for these consumable parts designed specifically for use with its plasma arc cutter products such as a shield/deflector, retaining cap, nozzle, electrode, and swirl ring, examples of which are depicted below. *See* Hypertherm 2023 Torch and Consumables Catalog found at https://www.hypertherm.com/en-US/solutions/consumables-and-torches/for-powermax-and-max-systems/.

## Powermax65®

**Duramax® hand/machine torch consumables**



| Minimum order quantity | | 1 | 1 | 5 | 5 | 1 |
|---|---|---|---|---|---|---|
| **Consumable type** | **Torch type** | **Shield/deflector** | **Retaining cap** | **Nozzle** | **Electrode** | **Swirl ring** |
| Drag cutting (30–65 A) | Hand | 220818¹ | 220854 | 220941¹ (45 A) / 220819¹ (65 A) | 220842² or 220777³·⁴ | 220857 |
| **Quantity in kit** | | 2 | 1 | 7 | 7 | 1 |
| Essential cutting kit – 851465 (30–65 A) | Hand | 220818 | 220854 | 220819 | 220842 | 220857 |

²For longer consumable life when cutting metal 1/2 inch (12 mm) and under, check out the CopperPlus electrode (part number 220777).
³Consumable available in bulk packaging. See order information below.

55.     One such consumable replacement product sold by Plaintiff is the Genuine Product (an electrode with part number 220842), depicted below and highlighted in yellow above, that practices the claims of the Patents-in-Suit. *See* https://www.hypertherm.com/en-US/hypertherm/powermax/electrode-duramax-and-duramax-lock-10-105-a/.



56.     Plasma torches are precision devices requiring precision consumables. Any

deviation from specified tolerances may impact overall performance, resulting in poor or inconsistent cuts, reduced cutting speed, significantly shorter consumable life, or a ruined or damaged torch.

57.     Plaintiff maintains extremely high, quality control standards for its Genuine Product. Plaintiff's Genuine Product is recognized around the world as a high-quality product designed for optimal use with Plaintiff's plasma arc cutter devices.

58.     Prior to the flood of Infringing Products entering the market, sales of the Genuine Product and other associated consumables represented a significant portion of Plaintiff's business. Plaintiff has expended substantial time, money, and other resources developing, advertising, and otherwise promoting its products sold under the Hypertherm brand.

**Defendants and the Infringing Products**

59.     Defendants are Chinese companies that import into the United States and sell consumable replacement parts, including torch tips, nozzles, and shield caps designed specifically for Plaintiff's torches, without authorization, and in violation of Plaintiff's intellectual property rights.

60.     Each Defendant imports into the United States and sells Infringing Products designed specifically for Plaintiff's products in violation of 35 U.S.C. § 271.

61.     None of the Defendants have any relationship with Plaintiff and none of the Defendants have permission to offer for sale, sell, or import patent-protected parts for Plaintiff's plasma arc torch cutting systems.

62.     Nevertheless, Defendants advertise their consumable parts for use with Plaintiff's plasma torch cutting systems. For example, many of Defendants' product listings on Amazon

specifically reference Hypertherm, as shown in the example below from the Amazon store of Defendant No. 1. *See* https://www.amazon.com/dp/B08LQ2YV2G/.



63. Defendants also assign part numbers that are identical to the part numbers of genuine Plaintiff consumables. By way of example, Defendant No. 1 sells "Plasma Cutter Electrodes" associated with Part No. 220842, as shown below with yellow highlighting. *See* https://www.amazon.com/dp/B08LDLR91R. This is an unauthorized copy of the electrode that Plaintiff sells as Part No. 220842.



64. The Infringing Products are designed exclusively for Plaintiff's plasma cutting systems and can only be used with Plaintiff's cutting systems. An example of one of the Infringing Products is shown below:



65.     The Infringing Product shown above was purchased by Plaintiff from the Amazon webstore of Defendant No. 1 (product ASIN Number B08LDLR91R) (the "Representative Product").

66.     The Representative Product shown above has the same structure as, and is representative of, all of the Infringing Products with respect to the Patents-in-Suit. *See* Exhibit G.

67.     For each Defendant, Plaintiff identified products sold on Amazon and other online stores that included at least one electrode having the same structure as the Representative Product and/or had an electrode with a part number of 220842. As identified in Exhibit H attached hereto, which includes Amazon ASIN numbers, Walmart Seller IDs, and eBay Seller IDs, and other identifying information relating to the identification of these products, each of the Defendants sells one or more products that contain one or more electrode products that have the same structure as the Representative Product on one or more Infringing Webstores.

68.     Each of the products identified in Exhibit H, as well as any other electrode product sold by Defendants not identified above that includes an electrode substantially similar to the Representative Product illustrated in ¶ 65 above is an "Infringing Product."

69.     On information and belief, prior to and contemporaneous with their infringing

actions alleged herein, Defendants had knowledge of the popularity and success of the Genuine Product and knowledge of the Patents-in-Suit, and in bad faith proceeded to make, use, offer for sale, sell, and/or import the Infringing Products. On information and belief Defendants have been engaging in the infringing actions alleged herein knowingly and intentionally, or with reckless disregard or willful blindness to Plaintiff's patent rights, and otherwise in bad faith.

70.     On information and belief, the Infringing Products use the lowest cost materials and the cheapest, fastest production techniques; no stringent manufacturing processes, and no quality control; are inferior, inconsistent, and unreliable compared to the Genuine Product.

71.     On information and belief, the low-quality metals used in the Infringing Products may not withstand the harsh operating demands of plasma cutting, denigrating the Hypertherm power supply performance and damaging Hypertherm's reputation in the market.

72.     On information and belief, the Infringing Products will not last as long as the Genuine Products and will generate lower quality cuts that may require rework.

### Response to Knowledge of Lawsuit

73.     In a prior lawsuit against an entity that currently uses the same branding as Defendant Number 30, involving the same Infringing Products and in which all three of the Patents-in-Suit were asserted, Plaintiff successfully obtained a permanent injunction via default judgment against further sales of the Infringing Products. *Hypertherm, Inc., Plaintiff, v. Wenzhou Ruixia E-Commerce Co., Ltd. d/b/a JACK & DAVE*, Civil Action No. 1:21-cv-607 (USDC for the District of New Hampshire), (hereinafter the "Prior Litigation").

74.     Contemporaneous with the entry of the injunction, rather than cease sale of Infringing Products as ordered by the court, the defendant formed a new entity, who is Defendant

Number 30 in this action, still using its previous trade name and still selling Infringing Products in flagrant disregard of the injunction.

75.      Amazon refused to remove Defendant Number 30's Infringing Products based on the injunction because the new entity's business entity information was not identical to the business entity information for the defendant in the Prior Litigation.

76.      Given the nature of the Defendants' infringing behavior and the likely connections between the various Defendants, each of the Defendants is likely aware of the outcome of the Prior Litigation and the success of the post-litigation scheme to avoid the consequences of the default judgment and permanent injunction in the Prior Litigation.

77.      Defendants' willful infringement with full knowledge of the Prior Litigation and intent to follow Defendant Number 30's strategy in the Prior Litigation in the event it was sued for infringement constitutes an exceptional circumstance entitling Plaintiff to its attorneys' fees accrued in the pursuit of its remedies in this case.

78.      Third parties routinely work in concert with accused infringers to facilitate evading enforcement efforts such as those exemplified by the Complaint in this action.

79.      Patent infringement lawsuits like this one are closely monitored by Chinese defendants on websites like www.sellerdefense.cn, www.away-sp.com, social media (QQ, WeChat, etc.), and elsewhere on the internet.

80.      The entity doing business as "SellerDefense" is a Chinese organization and website that monitors patent infringement lawsuits in this Judicial District.

81.      When SellerDefense observes that an intellectual property owner has filed a lawsuit, it announces this activity on its website, posting the identity of the Plaintiff, the intellectual

property involved in the case, the Complaint and all other public pleadings, and often the entire Schedule "A" for a case, and warns sellers to quickly drain their marketplace accounts, clean out their money transfer accounts, change their usernames, and hide their identities to avoid being caught.

82.     While SellerDefense is one of the most popular of these types of monitoring websites, it is by no means the only one. Other online platforms such as Seller Guard2 also monitor activity in this District, and post any relevant information, alerting infringing sellers to the name and identity of plaintiffs.

83.     These posts garner hundreds, even thousands of views within days. Indeed, websites like SellerDefense assist infringers and encourage them to work together.

84.     On information and belief, each Defendant is aware of SellerDefense and other third party monitors and routinely monitors the postings of such third-party monitors.

85.     On information and belief, upon becoming aware of the filing of this Complaint through the postings of third-party monitors or other means, each of the Defendants would understand, based on the name of the Plaintiff, the identity of the Patents-in-Suit, and the Infringing Products they are selling, that they are likely listed as Defendants on the attached Schedule A to this Complaint.

86.     All Defendants can easily and quickly transfer or conceal their funds in their payment and financial accounts to avoid detection and liability in the event the Plaintiff's enforcement efforts are discovered.

87.     If the Defendants learn of these proceedings, they are likely to immediately dissipate their assets through electronic transfers to foreign jurisdictions, destroy evidence and/or

change their entity name to try and avoid the consequences of their infringement as in the Prior Litigation.

### FIRST CAUSE OF ACTION
### Infringement of U.S. Patent No. 8,115,136

88.     Plaintiff repeats each of the allegations of paragraphs 43, 47, 51, and 59-69 above as if fully set forth herein.

89.     The '136 Patent is valid, enforceable, and was issued in full compliance with Title 35 of the United States Code.

90.     Plaintiff is the owner by assignment of the '136 Patent.

91.     Defendants have infringed and continue to infringe one or more claims of the '136 Patent in this Judicial District and elsewhere in the United States, including at least Claim 1, by offering for sale, selling, and/or importing the Infringing Products which infringe at least Claim 1 of the '136 Patent without authorization.

92.     For example, the Representative Product contains all of the elements of, and therefore infringes, claim 1 of the '136 Patent as set forth in the claim chart attached hereto as Exhibit D.

93.     As evidenced in Exhibit G attached to this Complaint, each of the Infringing Products has the same structure as the Representative Product and infringes at least claim 1 of the '136 Patent in the same manner as the Representative Product infringes claim 1 of the '136 Patent as set forth in Exhibit D.

94.     Defendants received constructive notice of the '136 Patent based on Plaintiff's virtual marking of its products.

95.     On information and belief, each Defendant received actual notice and has

knowledge of the '136 Patent based on (i) the fact that each Defendant procures and makes direct copies of Plaintiff's consumable replacement parts, (ii) the product label for Plaintiff's consumable products, which includes a URL (www.hypertherm.com/patents) that associates patented articles with the number of each corresponding patent, (iii) its awareness of the Prior Litigation in which the '136 Patent was asserted against identical products; and/or (iv) the filing and service of this Complaint.

96. On information and belief, Defendants' infringement of the '136 Patent has been willful.

97. As a result of the Defendants' sales of the Infringing Products, Plaintiff has been damaged and will continue to suffer damages in an amount to be proven at trial in accordance with 35 U.S.C. § 284.

98. Defendants' infringement of the '136 Patent has caused and will cause Plaintiff to suffer substantial and irreparable harm unless Defendants are enjoined from continuing to sell the Infringing Products or other infringing copies of genuine Plaintiff consumable replacement parts.

## SECOND CAUSE OF ACTION
### Infringement of U.S. Patent No. 8,541,712

99. Plaintiff repeats each of the allegations of paragraphs 44, 47, 51, and 59-69 above as if fully set forth herein.

100. The '712 Patent is valid, enforceable, and was issued in full compliance with Title 35 of the United States Code.

101. Plaintiff is the owner by assignment of the '712 Patent.

102. Defendants have infringed and continue to infringe one or more claims of the '712 Patent in this Judicial District and elsewhere in the United States, including at least Claim 1, by

offering for sale, selling, and/or importing the Infringing Products which infringe at least Claim 1 of the '712 Patent without authorization.

103. For example, the Representative Product contains all of the elements of, and therefore infringes, claim 1 of the '712 Patent as set forth in the claim chart attached hereto as Exhibit E.

104. As evidenced in Exhibit G attached to this Complaint, each of the Infringing Products has the same structure as the Representative Product and infringes at least claim 1 of the '712 Patent in the same manner as the Representative Product infringes claim 1 of the '712 Patent as set forth in Exhibit E.

105. Defendants received constructive notice of the '712 Patent based on Plaintiff's virtual marking of its products.

106. On information and belief, each Defendant received actual notice and has knowledge of the '712 Patent based on (i) the fact that each Defendant procures and makes direct copies of Plaintiff's consumable replacement parts, (ii) the product label for Plaintiff's consumable products, which includes a URL (www.hypertherm.com/patents) that associates patented articles with the number of each corresponding patent, (iii) its awareness of the Prior Litigation in which the '712 Patent was asserted against identical products; and/or (iv) the filing and service of this Complaint.

107. On information and belief, Defendants' infringement of the '712 Patent has been willful.

108. As a result of the Defendants' sales of the Infringing Products, Plaintiff has been damaged and will continue to suffer damages in an amount to be proven at trial in accordance with

35 U.S.C. § 284.

109.    Defendants' infringement of the '712 Patent has caused and will cause Plaintiff to suffer substantial and irreparable harm unless Defendants are enjoined from continuing to sell the Infringing Products or other infringing copies of genuine Plaintiff consumable replacement parts.

### THIRD CAUSE OF ACTION
### Infringement of U.S. Patent No. 8,541,718

110.    Plaintiff repeats each of the allegations of paragraphs 45, 47, 51, and 59-69 above as if fully set forth herein.

111.    The '718 Patent is valid, enforceable, and was issued in full compliance with Title 35 of the United States Code.

112.    Plaintiff is the owner by assignment of the '718 Patent.

113.    Defendants have infringed and continue to infringe one or more claims of the '718 Patent in this Judicial District and elsewhere in the United States, including at least Claim 1, by offering for sale, selling, and/or importing the Infringing Products which infringe at least Claim 1 of the '718 Patent without authorization.

114.    For example, the Representative Product contains all of the elements of, and therefore infringes, claim 1 of the '718 Patent as set forth in the claim chart attached hereto as Exhibit F.

115.    As evidenced in Exhibit G attached to this Complaint, each of the Infringing Products has the same structure as the Representative Product and infringes at least claim 1 of the '718 Patent in the same manner as the Representative Product infringes claim 1 of the '718 Patent as set forth in Exhibit F.

116.    Defendants received constructive notice of the '718 Patent based on Plaintiff's

virtual marking of its products.

117.    On information and belief, each Defendant received actual notice and has knowledge of the '718 Patent based on (i) the fact that each Defendant procures and makes direct copies of Plaintiff's consumable replacement parts, (ii) the product label for Plaintiff's consumable products, which includes a URL (www.hypertherm.com/patents) that associates patented articles with the number of each corresponding patent, (iii) its awareness of the Prior Litigation in which the '718 Patent was asserted against identical products; and/or (iv) the filing and service of this Complaint.

118.    On information and belief, Defendants' infringement of the '718 Patent has been willful.

119.    As a result of the Defendants' sales of the Infringing Products, Plaintiff has been damaged and will continue to suffer damages in an amount to be proven at trial in accordance with 35 U.S.C. § 284.

120.    Defendants' infringement of the '718 Patent has caused and will cause Plaintiff to suffer substantial and irreparable harm unless Defendants are enjoined from continuing to sell the Infringing Products or other infringing copies of genuine Plaintiff consumable replacement parts.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment in its favor and against Defendants and entry of an Order that:

A.    Each Defendant has infringed each of the Patents-In-Suit under 35 U.S.C. § 271;

B.    The infringement of each Patent-in-Suit by each Defendant was willful;

C. Awards all monetary relief available under the patent laws of the United States, including, but not limited to, actual damages, pre- and post-judgment interest, enhanced damages (including trebling of damages due to the willful nature of Defendants' infringement), and costs pursuant to 35 U.S.C. § 284;

D. This is an exceptional case, and that Plaintiff be awarded its attorneys' fees pursuant to 35 U.S.C. § 285;

E. Defendants, their officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert or participation with them be temporarily, preliminarily and permanently enjoined and restrained from: (1) any further infringement of the Patents-in-Suit, including but not limited to, any further sale, offer for sale or importation of the Infringing Products or any product that is not colorably different from any Infringing Product; (2) effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth herein; (3) aiding, abetting, contributing to, or otherwise assisting anyone in infringing the Patents-in-Suit; (4) committing any acts calculated to cause consumers to believe that Defendants' products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff; and (5) shipping, delivering, holding for sale, distributing, returning, transferring or otherwise moving, storing, or disposing of in any manner products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and that infringe any claim of the Patents-in-Suit or any reproductions, counterfeit copies, or colorable imitations thereof; using, linking to, transferring, selling, exercising control over, or otherwise owning or operating the Infringing Webstores,

listings, or any other domain name that is being used to sell or is the means by which Defendants could continue to sell Infringing Products;

F.      Defendants deliver to Plaintiff for destruction all Infringing Products as well as all means for making such products;

G.      Defendants correct any erroneous impression the consuming public may have derived concerning the nature, characteristics, or qualities of their products, including without limitation, the placement of corrective advertising and providing written notice to the public;

H.      All banks, savings and loan associations, other financial institutions, payment processors, on-line marketplaces, and other third-parties who are in active concert or participation with Defendants to, within two (2) business days of receipt of an Order entered by this Court: (1) locate all accounts connected to Defendants; (2) restrain and enjoin such accounts from transferring or disposing of any money or other of Defendants' assets; and (3) transfer any funds restrained in such accounts to Plaintiff within ten (10) business days of receipt of such Order.

I.      Until Plaintiff has recovered full payment of monies owed to it by Defendants, in the event that any new financial accounts controlled or operated by Defendants are identified, Plaintiff shall have the ongoing authority to direct any banks, savings and loan associations, other financial institutions, payment processors, and on-line marketplaces, with whom such newly identified accounts are maintained, to carry out the following activity: (1) locate all accounts connected to Defendants; (2) restrain and enjoin such accounts from transferring or disposing of any money or other of Defendants' assets; and (3) transfer any funds restrained in such accounts to Plaintiff within ten (10) business days of receipt of this Order.

J.     Upon Plaintiff's request, Defendants and any financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, and their related companies and affiliates, identify and restrain all funds, up to and including the total amount of judgment, in all financial accounts and/or sub-accounts used in connection with the Seller IDs, or other alias seller identification or e-commerce store names used by Defendants presently or in the future, as well as any other related accounts of the same customer(s) and any other accounts which transfer funds into the same financial institution account(s) and remain restrained until such funds are surrendered to Plaintiff in partial satisfaction of the monetary judgment entered herein.

K.     Upon Plaintiff's request, the applicable governing Internet marketplace website operators and/or administrators for the Seller IDs who are provided with notice of an injunction issued by this Court disable and/or cease facilitating access to the Seller IDs and any other alias seller identification names being used and/or controlled by Defendants to engage in the business of marketing, distribution, offering to sell, and/or selling Infringing Products.

L.     Upon Plaintiff's request, any messaging service and Internet marketplace website operators, administrators, registrar and/or top level domain (TLD) registry for the Seller IDs who are provided with notice of an injunction issued by this Court identify any e-mail address known to be associated with Defendants' respective Seller IDs.

M.     Upon Plaintiff's request, any Internet marketplace website operators and/or administrators who are provided with notice of an injunction issued by this Court permanently remove from the multiple platforms, which include, inter alia, a direct platform, group platform, seller product management platform, vendor product management platform, and brand registry platform, any and all listings and associated images of Infringing Products via the e-commerce

stores operating under the Seller IDs, including but not limited to the listings and associated images identified by the "parent" and/or "child" Amazon Standard Identification Numbers ("ASIN") on Schedule "A" annexed hereto, the ASINs identified in Exhibit H, and upon Plaintiff's request, any other listings and images of Infringing Products associated with any ASIN linked to the same sellers or linked to any other alias seller identification names being used and/or controlled by Defendants to promote, offer for sale and/or sell Infringing Products.

N.      Upon Plaintiff's request, Defendants and any Internet marketplace website operators and/or administrators who are provided with notice of an injunction issued by this Court immediately cease fulfillment of and sequester all Infringing Products of each Defendant in its inventory, possession, custody, or control, and surrender those goods to Plaintiff.

O.      Awards such other and further relief as this court deems appropriate in law and in equity.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all issues triable as of right to a jury. Fed. R. Civ. P. 38(b).

DATED this 20th day of June, 2024.

Respectfully submitted,

By /s/ *Collin D. Hansen*
    Collin D. Hansen (ARDC#: 6335991)
    Email: chansen@wnlaw.com
    **WORKMAN NYDEGGER**
    840 S Northwest Hwy, Suite 10
    Barrington, IL 60010
    (815) 353-4438 (Telephone)

    Brian N. Platt (UT# 17099)
    Email: bplatt@wnlaw.com
    Kenneth J. Dyer (CA#191192)
    Email: kdyer@wnlaw.com
    **WORKMAN NYDEGGER**
    60 East South Temple, Suite 1000
    Salt Lake City, UT 84111
    (801) 533-9800 (Telephone)

    *Attorneys for Hypertherm, Inc.*

**VERIFICATION**

I, Brett Hansen, declare that I am the Director of Intellectual Property for Hypertherm, Inc., Plaintiff in the above-captioned matter in the United States District Court for the Northern District of Illinois. I authorized the filing of this Complaint. I have reviewed the factual allegations made in this Complaint, and to those allegations of which I have personal knowledge, I know them to be true. For those allegations of which I do not have personal knowledge, I believe them to be true based on the information and documents I have reviewed in connection with the preparation of this Complaint, and which are attached to the Complaint, including the Defendants' product listings, product photos, and the products offered for sale.

Dated: June 19 , 2024

Verified by:

Brett Hansen, Director of Intellectual Property
Hypertherm, Inc.

## SCHEDULE A

| Defendant Number | Brand Name | Seller Name | Business Name | Country | Seller ID |
|---|---|---|---|---|---|
| AMAZON SELLERS | | | | | |
| 1 | Kemao | Kemao_Industry | Jiangsu Kemao Automation Co., Ltd. | China | A1KKJHO7HJM9WA |
| 2 | Acceptin | Acceptin | wenzhouwalixidianzishangwuyouxiangongsi | China | A31XVBQN7HQX15 |
| 3 | BDR | MH Tec Store | ShenyangMinghaoZhinengZidonghuaKejiYouxianGongsi | China | A2EP7B94F6FC2V |
| 4 | DEEPSOUND | DEEPSOUND | rongxianyangfengjiayongdianqijingyingbu | China | A2M5ZSHHA6HPY0 |
| 5 | DIGBYS | Lsafes | shanghailinglingmaoyiyouxiangongsi | China | A208WRYST0QM4Q |
| 6 | Donwind | Donwind | Wenzhou Honghao Automobile Sales Co., Ltd. | China | AJTJIOMCE03QY |
| 7 | EactEl | Orient sunrise | sichuanpanyuweishangmaoyouxiangongsi | China | A1G9WP6EATNJ6D |
| 8 | Eyes.sys | ShenZhen Anber Trading Co., Ltd. | shen zhen shi an bei er mao yi you xian gong si | China | A1AQVKCENI7HQS |
| 9 | FSHero Riding | FSHero Riding | foshanshi yingxiong qixingzhuangbei youxiangongsi | China | A124I0GQKH1YHR |
| 10 | Generic | Fast Delivery 9-16 Days | chengduyujiaorugedianzishangwuyouxiangongsi | China | A1JKQUCGVBTY3T |
| 11 | Generic | ZhongMaoDianZiShangWu(ShanDong)YouXianGongSi | JiaWang Wang | China | A2PU0L8ZGV7CNA |
| 12 | inkx | Wangyu1234 | Wangyu1234 | China | A1QNLI02UL5GFF |
| 13 | Lewan | Lewan welding and cutting | wangjiangang | China | A2UFA2NLP1CMK0 |
| 14 | LIPUSE | SXXZSLH | xinzhoushixinfuqulihuashangmaojingyingbu | China | A1WN09FGVHN7EX |
| 15 | MCOLT | Lorry High Quality Shops | sichuanshenglongruidianzishangwuyouxiangongsi | China | A38KD3REF30D0A |
| 16 | NFSpeeding | MGER | sichuanmanggeerdianzishangwuyouxiangongsi | China | A2XGD0ORVX5UDA |
| 17 | PLAXON | QingDao Welding | ShenzhenshiDepeiDianziKejiYouxianGongsi | China | ACZQ9L5Z4QW69 |
| 18 | PTNHZ | PTNHZ | ruian shi yu su qipei you xian gongsi | China | A3N9RYSL8O1DFF |
| 19 | QULIT | H Cheng | Qinzhou Hangyanghai e-commerce Co., Ltd. | China | A6YGUCZ00HZOJ |
| 20 | SBOJI | TuKeMei | Yiwusilvmeifuzhuangshanghang | China | A8ZJL01CG11X9 |
| 21 | SXOPU | LiuYongGang | queshanxianqiancaimengchuangdianjiagongbu | China | AF1ETPWIMP1O |
| 22 | TEMSONE | TEMSONE AUTO | RuianshiHexikejiyouxiangongsi | China | A2JTEJY40SW3WD |
| 23 | UPH | Jingmen Chongye | jingmenshichongyeshangmaoyouxiangongsi | China | A3MBE57F1YQDNH |
| 24 | nihao | ni hao | XinLong Chen | China | A2BTCXRJD8X60M |
| 25 | STARTNOW | StartNowLaser | NanJing Startnow Opto-Electronics Co.Ltd | China | A1E47AJW8N5PQD |

**SCHEDULE A**

| Defendant Number | Brand Name | Seller Name | Business Name | Country | Seller ID |
|---|---|---|---|---|---|
| 26 | WURAWUS | GLARAY | ShenzhenShiZhitongGuangruiKejiYouxianGongsi | China | A13MRIDJZTU5KH |
| 27 | WARBESON | WARBESON FACTORY | Yiwu LuoDuo Trading Co., Ltd. | China | A2XZS2TEGFZ4IV |
| 28 | Wztepeng | MGER | ruianshi tepeng maoyi youxiangongsi | China | AYGQT4AQ2N1HK |
| 29 | Xinbalove | Premium Department Stores | QingDaoJinHeZhiMeiGongYiPinMaoYiYouXianGongSi | China | A1HP09QPADS8ZK |
| 30 | Zomarie | Jack&Dave | Taizhou Lonke E-Commerce | China | AFS3AWMJDFRS8 |
| **EBAY SELLERS** | | | | | |
| 31 | CPAUTO | Automotive_2024 | automotive_2023 | China | Automotive_2024 |
| 32 | Factory/OEM | Autocare_parts | autocare_parts | China | Autocare_parts |
| 33 | For Hypertherm | Automaster-Land | automaster-888 | China | Automaster-Land |
| 34 | For Hypertherm | Autostartup | auto_st | China | Autostartup |
| 35 | Hypertherm | KEMAO | ke_mao | China | KEMAO |
| 36 | Top10 Racing | top10_racing | TOP10 RACING | China | top10_racing |
| 37 | Unbranded | 158chat00 | sprayerXX | China | 158chat00 |
| 38 | Unbranded | Autocare_parts | autocare_parts | China | Autocare_parts |
| 39 | Unbranded | dzindustrial | dzindustrial | China | dzindustrial |
| 40 | Unbranded | pneumatic-welded | pneumatic Welded parts store | China | pneumatic-welded |
| 41 | Unbranded | sonc1331 | sonc1331 | China | sonc1331 |
| **WALMART SELLERS** | | | | | |
| 42 | BLUESON | Kajove | changshashiduluosenkejiyouxiangongsi | China | 101555051 |
| 43 | Bosisa | Bosisa | shenzhenshishengdelikejiyouxiangongsi | China | 101556227 |
| 44 | Ddong | DONGDONG | shenzhenshilieniaojinchukouyouxiangongsi | China | 101111620 |
| 45 | Hastore | Hastore | changshashiweimeikejiyouxiangongsi | China | 101623375 |
| 46 | Hmoddpon | BeiXin | shenzhenshibeixinkejiyouxiangongsi | China | 101561726 |
| 47 | Kabuda | KABUDA | suzhoubudaweibangshangmaoyouxiangongsi | China | 101127803 |
| 48 | KAIRUITE | kairuite | shenzhenshikairuitedianzishangwuyouxiangongsi | China | 101590998 |
| 49 | Mduoduo | Yannee | suzhouyanyetingmaoyiyouxiangongsi | China | 101138827 |
| 50 | Mugoebu | zhehao | chengdouzhehaoshangmaoyouxiangongsi | China | 101121244 |