IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HYPERTHERM, INC., a New Hampshire corporation, | |
| *Plaintiff,* | CASE NO. 1:24-cv-5198-GNA-JC |
| v. | |
| THE INDIVIDUALS, PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED IN SCHEDULE "A", | Honorable Georgia N. Alexakis<br>Magistrate Judge Jeffrey Cole |
| *Defendants.* | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS
MOTION FOR ENTRY OF DEFAULT JUDGMENT**

Plaintiff, Hypertherm, Inc. ("Hypertherm" or "Plaintiff") by and through its undersigned counsel, submits this Memorandum in Support of its Motion for Entry of Default Judgment (the "Motion") pursuant to Rule 55 against the defendants identified on the amended Schedule A attached hereto as Exhibit 1 (collectively, the "Defaulting Defendants").

I.  **INTRODUCTION**

Plaintiff requests entry of default judgment based on its action for infringement by the Defaulting Defendants of U.S. Patent Nos. 8,115,136 ("the '136 Patent"), 8,541,712 ("the '712 Patent"), and 8,546,718 ("the '718 Patent") (collectively, the "Patents-in-Suit"). The Defaulting Defendants are willful infringers that freeride on Hypertherm's goodwill, injure Hypertherm's good reputation, and steal from its business in an unfair and illegal manner. The Defaulting Defendants blatantly sell Infringing Products that are consumable replacement parts for use with Plaintiff's plasma arc cutter products on various internet platforms—with full knowledge of their infringement. Plaintiff has suffered significant monetary and non-monetary damages as a result of

1

this infringement, including *lost profits damages in excess of three million dollars*.

As all Defaulting Defendants have failed to timely respond to the Verified Complaint, Plaintiff now moves this Court to enter default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2), finding that: (a) Defaulting Defendants are liable on Counts I, II and III of Plaintiff's Verified Complaint; (b) Plaintiff is entitled to a permanent injunction prohibiting Defaulting Defendants from selling Infringing Products; (c) Plaintiff is entitled to an award of damages in the amount of **$3,453,406.20** based on its lost profits; (d) Defaulting Defendants' financial accounts should remain frozen until all damages awarded to Plaintiff have been paid; and (e) Plaintiff is entitled to a transfer of funds from all assets in Defaulting Defendants' financial accounts to satisfy the damages award. A Proposed Order more specifically identifying the relief sought is being filed concurrently herewith. For the reasons set forth below, Plaintiff's Motion should be granted.

II.   **STATEMENT OF FACTS**

   A.   **Hypertherm**

Hypertherm is a worldwide leader in the technological development, manufacturing, and marketing of plasma arc cutting systems and replacement parts. Plaintiff sells, amongst other devices, plasma arc cutter devices such as the Powermax 65. *See* [Dkt. 1] ¶¶ 52, 53. The Powermax65 plasma arc cutter utilizes several consumable parts during operation and Hypertherm sells genuine replacement products for these consumable parts designed specifically for use with its plasma arc cutter products such as a shield/deflector, retaining cap, nozzle, electrode and swirl ring, examples of which are depicted below. *Id*. ¶ 54. One such consumable replacement product sold by Hypertherm is an electrode with part number 220842, depicted below, that practices the claims of the Patents-in-Suit (the "Genuine 220842 Electrode"). *Id.* ¶ 55.



Prior to the flood of Infringing Products entering the market, sales of Genuine 220842 Electrodes represented a significant portion of Hypertherm's business. *Id*. ¶ 58.

**B.      Defaulting Defendants and the Infringing Products**

Defaulting Defendants are Chinese companies that import into the United States and sell consumable replacement parts, including the Infringing Products, designed exclusively for Plaintiff's torches, without authorization, and in violation of Plaintiff's intellectual property rights. *Id*. ¶¶ 59, 64. Defaulting Defendants conduct their operations and sell their products, including the Infringing Products, through fully interactive commercial websites hosted on various Internet based e-commerce stores including Amazon.com, Walmart.com, and Ebay.com. and other online retail platforms ("Infringing Webstores"). *Id*. ¶ 10. The Defaulting Defendants advertise their consumable parts for use with Hypertherm's plasma torch cutting systems. *Id*. ¶ 62. Indeed, many of Defaulting Defendants' product listings on Amazon specifically reference Hypertherm. *Id*. The Defaulting Defendants also assign part numbers that are identical to the part numbers of genuine Hypertherm consumables. *Id*. ¶ 63.

An example of one of the Infringing Products is shown below:



3

The Infringing Product shown above was purchased by Plaintiff from the Amazon webstore of Defendant No. 1 (the "Representative Product"). *Id*. ¶¶ 64-65. The Representative Product: (a) is representative of all Infringing Products with respect to the Patents-in-Suit; and (b) infringes at least claim 1 of each Patent-in-Suit. *See* [Dkt. 1] ¶¶ 66-68, Exs. D-H. Accordingly, all Infringing Products sold by Defaulting Defendants infringe at least claim 1 of each Patent-in-Suit. *Id*.

Based on discovery produced by third-parties Amazon, eBay and Walmart, Plaintiff identified the Infringing Products (products with one or more electrodes with part number 220842) sold by the Defaulting Defendants. *See* Declaration of Kenneth J. Dyer in Support of Motion for Entry of Default Judgment ("Dyer Decl.") ¶ 6. A list of these Infringing Products identified by the ASIN or Item ID for those products is reproduced in the Dyer Declaration. *Id*. ¶ 6.

C. **Case Status**

Plaintiff Hypertherm initiated this action against Defaulting Defendants on June 21, 2024. [Dkt. 1]. On July 18, 2024, this Court granted Plaintiff's *Ex Parte* Motion for Entry of a Temporary Restraining Order (the "TRO") [Dkt. 13], extended the TRO [Dkt. 17], and converted the TRO to a Preliminary Injunction as to Defendant Nos. 1-3, 5-8, 10-12, 14-15, 17, 19-21, 23, 26-35, 37-40, 42-43 and 45-50. [Dkt. 31]. The TRO authorized Plaintiff to provide any required notice relating to these proceedings, "by electronically publishing a link to the Verified Complaint, this Order and other relevant documents on a website and by sending an e-mail, to the e-mail addresses identified by third parties, that includes a link to said website." [Dkt. 13] ¶ 6.

Since, and pursuant to entry of the TRO, certain financial accounts associated with the Defaulting Defendants were frozen and mailing addresses were provided by subpoenaed third parties. On August 6, 2024, after receipt of the last of these email addresses, Plaintiff served the Verified Complaint on Defaulting Defendants. *See* [Dkt. 21] ¶¶ 5-14; [Dkt. 22] ¶¶ 5-14. The Defaulting Defendants have not filed an answer or otherwise pled and on October 9, 2024 the

4

Court entered default [Dkt. 55] for the Defaulting Defendants pursuant to Fed. R. Civ. P. 55(a).

**III. ARGUMENT**

    **A. Legal Standard**

"[A] default judgment establishes, as a matter of law, that defendants are liable to plaintiff as to each cause of action alleged in the complaint." *U.S. v. Di Mucci*, 879 F.2d 1488, 1497 (7th Cir. 1989). The Federal Rules provide a two-step process for obtaining a default judgment. *See* Fed. R. Civ. P. 55. First, the Clerk must enter default against the defendant for failing to plead or otherwise defend the suit. *See* Fed. R. Civ. P. 55(b)(a). After default is entered—as it has been here with respect to the Defaulting Defendants—the defendant is deemed to have admitted the well-pleaded facts in the complaint. *See Am. Taxi Dispatch, Inc., v. Am. Metro Taxi & Limo Co.*, 582 F. Supp. 2d 999, 1004 (N.D. Ill. 2008). In cases such as this, where the Plaintiff seeks a default judgment requesting something other than a sum certain, the plaintiff must apply to the Court for said judgment under Fed. R. Civ. P. 55(b)(2). In deciding whether to grant the plaintiff's application, the Court must "consider whether the unchallenged facts constitute a legitimate cause of action," and whether there is a sufficient basis in the pleadings for the requested judgment. *See Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010).

    **B. This Court Has the Power to Grant the Default Judgment**

To grant default judgment, the Court must have both subject matter jurisdiction and personal jurisdiction over the Defaulting Defendants. *Swaim v. Moltan Co.*, 73 F.3d 711, 716 (7th Cir.1996). Here, the Court has subject matter jurisdiction because this action arises under the Patent Laws of the United States, 35 U.S.C. § 101, *et seq*. The Court also has personal jurisdiction over the Defaulting Defendants. As discussed in detail in the Verified Complaint, personal jurisdiction exists because the Defaulting Defendants directly target business activities toward consumers in the United States, including Illinois. More specifically, Defaulting Defendants

import and sell Infringing Products for use with Hypertherm products on Amazon.com and other Infringing Webstores in the United States, including in this district. [Dkt. 1] ¶¶ 10-13, 17-21; *uBID, Inc. v. GoDaddy Grp., Inc.* 623 F.3d 421, 423-24 (7th Cir. 2010) (without benefit of an evidentiary hearing, plaintiff bears only the burden of making a *prima facie* case for personal jurisdiction; all of plaintiff's asserted facts should be accepted as true and any factual determinations should be resolved in its favor). Accordingly, personal jurisdiction is proper. *See NBA Properties, Inc. v. HANWJH, 46 F.4th 614, 624-627 (7th Cir. 2022)*.

      **C.    Default Judgment Should be Granted on All Counts of the Verified Complaint.**

Counts I-III of the Verified Complaint assert claims for patent infringement in violation of the Patent Act, 35 U.S.C. § 271, which prohibits making, using, offering to sell, selling, or importing "any patented invention during the term of the patent" without authority from the patent owner. *See generally*, [Dkt. 1] ¶¶ 88-120. Specifically, Counts I, II and III respectively allege that the Defaulting Defendants infringe the '136 Patent, the '712 Patent, and the '718 Patent "by offering for sale, selling, and/or importing the Infringing Products . . . without authorization." *See* [Dkt. 1] ¶¶ 91, 102, 113. A product infringes a patented invention when the product contains every limitation of the claims, either literally or under the doctrine of equivalents. *E.g.*, *Seal-Flex, Inc. v. Athletic Track & Court Constr.*, 172 F.3d 836, 842 (Fed. Cir. 1999).

Here, Hypertherm sufficiently pleads a claim for patent infringement pursuant to 35 U.S.C. § 271. First, Hypertherm owns each of the Patents-in-Suit by assignment. [Dkt. 1] ¶¶ 44-46, 90, 101, 112. Second, none of the Defaulting Defendants were authorized to sell the Infringing Products. *Id.* ¶¶ 91, 102, 113. Finally, as detailed in the Verified Complaint, the Infringing Products are all structurally identical and contain every limitation of at least one claim of each of the Patents-in-Suit. *See* [Dkt. 1] ¶¶ 92-93, 103-104, 114-115, Exs. D-G. For example, as shown in [Dkt. 1] at Ex. D, with respect to Count I, Plaintiff plead specific facts showing where each element of claim

1 of the '136 Patent is found in the Representative Product, and thus all of the Infringing Products. Plaintiff plead similar specific facts with respect to Counts II and III. *See id*. at Exs, E-F.

Since the Defaulting Defendants failed to answer or otherwise plead, the Court must accept the allegations contained in Plaintiff's Verified Complaint as true. *See* Fed. R. Civ. P. 8(b)(6); *Am. Taxi Dispatch,* 582 F. Supp. 2d 999 at 1004. And, because these unchallenged allegations constitute a legitimate cause of action with respect to each of Counts I-III, the Court should enter default judgment as to the Defaulting Defendants' liability for patent infringement.

### D. Plaintiff is Entitled to Lost Profits Damages

"Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement." 35 U.S.C. § 284. Because the Defaulting Defendants were on notice of the Patent-in-Suit due to Plaintiff's marking of its products (*see* [Dkt. 1] ¶47), Plaintiff is entitled to damages for the sales of all Infringing Products after June 21, 2018. *See* 35 U.S.C. §§ 286, 287(a). An award of damages pursuant to a default judgment may be entered without a hearing if "the amount claimed is . . . capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits." *Dundee Cement Co. v. Howard Pipe Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir.1983) (collecting authority). As discussed below, the documentary evidence in this case, along with the detailed affidavits of Mssrs. Kenneth Dyer and Brett Hansen, establish that Hypertherm is entitled to lost profits damages of $3,453,406.20 USD.

Under *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, the patentee is entitled to lost profits if it can establish four things: (1) demand for the patented product, (2) absence of acceptable, non-infringing alternatives, (3) manufacturing and marketing capability to exploit demand, and (4) that the patentee would have made a profit if it had made the infringer's sales. 575 F.2d 1152, 1156 (6th Cir. 1978); *accord Tek Global v. Sealant Sys. Int'l, Inc.*, 920 F.3d 777,

7

789 (Fed. Cir. 2019). Hypertherm clearly meets each of these four requirements.

First, there is substantial demand for the patented product. *See* Declaration of Brett Hansen in Support of Motion for Entry of Default Judgment ("Hansen Decl.") ¶ 21. Each Infringing Product comprises at least one, and usually ten (10) or more, individual infringing electrodes with part number 220842 ("Infringing 220842 Electrodes"). *See* Dyer Decl. ¶ 7. Discovery has shown that at least 618,890 Infringing 220842 Electrodes were sold. *Id*. ¶¶ 7, 11. Demand continues to be strong, with thousands of Genuine 220842 Electrodes sold each month. Hansen Decl. ¶ 21. Second, there is an absence of acceptable, non-infringing alternatives in the marketplace. *Id*. ¶ 22. Indeed, given that in order to operate for the intended purpose any alternative would necessarily infringe there can be no non-infringing alternatives. *Id*. Third, Hypertherm has maintained manufacturing capacity to fully exploit the demand. *Id*. ¶ 20. Indeed, Hypertherm's US-based manufacturing facility can easily manufacture the parts necessary to replace the total of 618,890 Infringing 220842 Electrodes sold by Defaulting Defendants. *Id*.

Finally, Hypertherm would have made a substantial profit if it had made the sales made instead by the Defaulting Defendants. Hypertherm sells Genuine 220842 Electrodes to both OEMs and Hypertherm's channel partners. *Id*. ¶ 13. Hypertherm's channel partners sell directly to consumers that need consumables such as the Genuine 220842 Electrodes to use with their Hypertherm plasma arc cutter devices such as the Powermax 65. *Id*. The average price charged by Hypertherm to its channel partners for each Genuine 220842 Electrode is seven dollars and eighty-eight cents ($7.88). *Id*. ¶ 15. The cost of manufacturing each Genuine 220842 Electrode (including labor, equipment and materials) at Hypertherm's manufacturing facility in Lebanon, New Hampshire is two dollars and thirty cents ($2.30). *Id*. ¶¶ 16-17. Accordingly, the profit lost by Hypertherm for each sale of an Infringing 220842 Electrode is five dollars and fifty-eight cents

($5.58). *Id.* ¶ 18. The sales of Infringing 220842 Electrodes by the Defaulting Defendants directly compete with the sales of Genuine 220842 Electrodes. *Id.* ¶ 14. Accordingly, each sale of an Infringing 220842 Electrode by the defaulting defendants was a sale of a Genuine 220842 Electrode that was lost by Hypertherm. *Id.*

Defaulting Defendants sold 618,890 Infringing 220842 Electrodes. *See* Dyer Decl. ¶¶ 7, 11. Accordingly, Hypertherm is entitled to lost profits of $5.58 per electrode, multiplied by the number of infringing electrodes sold, for a total of: **$3,453,406.20 USD**. Based on information provided in discovery, Plaintiff calculated the number of Infringing 220842 Electrodes that were sold by each of the Defaulting Defendants individually. *See id.* ¶ 7. Below is a table setting forth the amount of lost profits damages due from each Defaulting Defendant[1] based on the number of Infringing 220842 Electrodes sold by each Defaulting Defendant multiplied by $5.88 (the profit lost by Plaintiff per electrode) along with information regarding the amount of restrained funds[2] associated with each of the Defaulting Defendants.

| Def. # | Seller Name | Seller Id | Infringing 220842 Electrodes Sold | Damages | Restrained Funds |
|---|---|---|---|---|---|
| 1 | Kemao | A1KKJHO7HJM9WA | 77,190 | $430,720.20 | $74,076.61 |
| 6 | Donwind | AJTJIOMCE03QY | 413,150 | $2,305,377 | $18,157.94 |

---

[1] Hypertherm does not seek lost profits damages with respect to Defendant Nos. 5, 7,12, 21 and 50. The limited information provided by Amazon and Walmart regarding these defendants indicated there were no actual sales (only offers for sale) of the Infringing Products identified in the Verified Complaint.

[2] Hypertherm has thus far been unable to identify specific US bank accounts associated with the Defaulting Defendants as the limited information provided by Amazon and eBay has been insufficient for the banks identified by Amazon and eBay to specifically identify any specific accounts. Dyer Decl. at ¶¶ 17-18. Accordingly, no U.S. bank accounts associated with any of the Defaulting Defendants have been frozen and Hypertherm has no knowledge regarding the available funds in any of those accounts. *Id*. Hypertherm is continuing to work with these financial institutions to try and identify the relevant accounts to the extent any such accounts still exist.

| 10 | Fast Delivery 9-16 Days | A1JKQUCGVBTY3T | 5 | $27.90 | $570.10 |
| 11 | JiaWang Wang | A2PU0L8ZGV7CNA | 20 | $111.60 | $177.49 |
| 14 | SXXZSLH | A1WN09FGVHN7EX | 20 | $111.60 | $115.34 |
| 15 | Lorry High Quality Shops | A38KD3REF30D0A | 5 | $27.90 | $677.52 |
| 17 | QingDao Welding | ACZQ9L5Z4QW69 | 13,255 | $73,962.90 | $2,761.80 |
| 19 | H Cheng | A6YGUCZ00HZOJ | 5 | $27.90 | $266.01 |
| 20 | TuKeMei | A8ZJL01CG11X9 | 10 | $55.80 | $174.52 |
| 23 | Jingmen Chongye | A3MBE57F1YQDNH | 360 | $2,008.80 | $124.69 |
| 27 | WARBESON FACTORY | A2XZS2TEGFZ4IV | 1,140 | $6,361.20 | $738.65 |
| 28 | MGER | AYGQT4AQ2N1HK | 45,870 | $255,954.60 | $0.00 |
| 29 | Premium Department Stores | A1HP09QPADS8ZK | 20 | $111.60 | $40.11 |
| 30 | Jack&Dave | A1GE06MXPL4SLF | 34,730 | $193,793.40 | $680.32 |
| 33 | Automaster-Land | 2463473591 | 280 | $1,562.40 | $17.53 |
| 34 | Autostartup | 2465729597 | 80 | $446.40 | $2.95 |
| 35 | KEMAO | 2002583359 | 32,630 | $182,075.40 | $321.27 |
| 40 | pneumatic-welded | 2565441095 | 120 | $669.60 | $394.01 |

*See* Dyer Decl. ¶¶ 7-8, 11-12, 14-16. For these reasons, the Court should enter judgment that the Defaulting Defendants pay damages to Hypertherm according to the amounts set forth above.

### E. Hypertherm is Entitled to an Injunction against Future Infringement

In addition to the foregoing relief, Plaintiff respectfully requests entry of a permanent injunction enjoining Defaulting Defendants from infringing the Patents-in-Suit, including at least all injunctive relief previously awarded by this Court to Plaintiff in the TRO and Preliminary Injunction. Moreover, Plaintiff is entitled to permanent injunctive relief to act against any

additional online stores through which the Defaulting Defendants that are selling Infringing Products. *See, e.g.*, *Tuf-Tite, Inc. v. Fed. Package Networks, Inc.*, No. 14-cv-2060, 2014 U.S. Dist. LEXIS 163352, at *29 (N.D. Ill. 2014); *Scholle Corp. v. Rapak LLC*, 35 F. Supp. 3d 1005, 1009 (N.D. Ill. 2014). Such relief is necessary to stop ongoing irreparable harm to Hypertherm's control over its rights in the Patents-in-Suit, its reputation, associated goodwill, and harm to consumers.

A party seeking a permanent injunction must demonstrate "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *E360 Insight v. Spamhaus Project*, 500 F.3d 594, 604 (7th Cir. 2007). Each of these factors weighs in favor of injunctive relief in this case.

### 1. Hypertherm Suffered Irreparable Harm

Irreparable harm is presumed in patent infringement cases where a clear showing of patent validity and infringement has been made. *See Bell & Howell Doc. Mgm't Prods. Co. v. Altek Sys.*, 132 F.3d 701, 708 (Fed. Cir. 1997) ("In matters involving patent rights, irreparable harm has been presumed when a clear showing has been made of patent validity and infringement.") (citations omitted). Defaulting Defendants' infringement of the Patents-in-Suit irreparably harms Hypertherm through diminished goodwill, damage to Hypertherm's reputation, loss of market share, loss of exclusivity, and loss of sales. Additionally, Hypertherm maintains extremely high, quality control standards for its Genuine 220842 Electrode and it is recognized around the world. [Dkt. 1] ¶57. In contrast to the Genuine 220842 Electrode, the Infringing Products use the lowest cost materials, are inferior, inconsistent, unreliable, will not last as long, and result in inferior cutting results. *See* [Dkt. 1] ¶¶ 70-72. Hypertherm's loss of goodwill and reputation due to the

diversion of consumers to purchasing the low-quality Infringing Products will result in an irreparable and incalculable loss to Plaintiff. *See Promatek Industries, Ltd. v. Equitrac Corp.*, 300 F.3d 808, 813 (7th Cir. 2002) (finding that damage to plaintiff's goodwill was irreparable harm for which plaintiff had no adequate remedy at law). Indeed, the damage caused to Hypertherm's brand by Defendants' selling of low-quality products that mimic Hypertherm's part numbers is largely unquantifiable and money damages therefore cannot address the loss of control and damage to Plaintiff's reputation and goodwill. These effects each constitute irreparable harm to Hypertherm.

### 2. No Adequate Remedy at Law Exists

Next, the lost profits damages requested by Hypertherm are not adequate to compensate for the injuries it suffered as a result of the infringement by the Defaulting Defendants. Patent rights are based on exclusive use, and uncontrolled use of a patent by a third party leads to the erosion of a patent owner's rights in its patents. Accordingly, monetary remedies after infringement are inadequate to compensate for the business and brand losses suffered by Hypertherm. *E.g.*, *ActiveVideo Networks, Inc. v. Verizon Cmm'ns, Inc.*, 694 F.3d 1312, 1340 (Fed. Cir. 2012) (noting that courts consider whether a patent holder has suffered non-quantifiable losses, such as "loss of business opportunity or damage to brand recognition.").

Finally, because Defaulting Defendants all reside in China, the requested monetary damages are unlikely to be collected in full, thus rendering those damages inadequate. *See Robert Bosch, LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1156 (Fed. Cir. 2011) (reversing denial of permanent injunction where the likely availability of monetary damages was in question, citing *O2 Micro Int'l Ltd. v. Beyond Inn. Tech. Co.*, No. 2:04-cv-0032, 2007 WL 869576, at *2 (E.D. Tex. Mar. 21, 2007) where "'all three defendants are foreign corporations and that there is little assurance that [plaintiff] could collect monetary damages'"). Other courts have found that money

damages were insufficient in similar cases involving foreign infringers. *E.g.*, *Aevoe Corp. v. AE Tech Co., Ltd.*, No. 2:12-cv-0053, 2012 WL 760692, at *5 (D. Nev. Mar. 7, 2012) ("[A] finding of irreparable harm was not clearly erroneous because it also found that since AE Tech is a foreign corporation, money damages would be insufficient."); *Otter Prods.*, 2013 WL 5910882, at *2 ("because Anke has no presence in the United States, it may be difficult or impossible for Otterbox to enforce a monetary judgement against Anke"); *Bushnell, Inc. v. Brunton Co.*, 673 F.Supp.2d 1241, 1263 (D. Kan. 2009) (granting preliminary injunction; "the prospect of collecting money damages from a foreign defendant with few to no assets in the United States tips in favor of a finding of irreparable harm"); *Nike, Inc. v. Fujian Bestwinn*, 166 F.Supp.3d, at 1179 ("[B]ecause Bestwinn has no presence in the United States, it may be difficult or impossible for NIKE to recover a money judgement against Bestwinn"). Accordingly, this factor also weighs in favor of a permanent injunction.

### 3. The Balance of Harms Tips Sharply in Hypertherm's Favor

The balance of hardships weighs in favor of granting injunctive relief. Hypertherm is a worldwide leader in the development, manufacturing, and marketing of plasma arc cutting systems and replacement parts. [Dkt. 1] ¶52. Since 1968, Plaintiff has contributed pioneering advances to metal cutting technologies and has nearly 300 U.S. patents protecting its innovations. *Id*. Plaintiff has expended substantial resources developing and promoting its products. *Id*. ¶58. Defaulting Defendants knowingly infringed the Patents-in-Suit (*id.* ¶¶ 91, 102, 113) and, as such, any harm from a permanent injunction is of their own making. *See Smith Int'l., Inc. v. Hughes Tool Co.*, 718 F.2d 1573, 1581 (Fed. Cir. 1983) ("[I]t is clearly established that Smith knew of the Hughes patents when it designed the F series bits and took a calculated risk that it might infringe those patents . . . it will not now be heard to say that public policy is in its favor. To the contrary, public policy

favors protection of the rights secured by the valid patents."). Indeed, as willful infringers, Defendants are entitled to little equitable consideration. See *Gallery House, Inc. v. Yi*, 582 F. Supp. 1294, 1298 (N.D. Ill. 1984) (that defendant may lose profits "merits little equitable consideration;" as an infringer has no "standing to complain that his vested interest will be disturbed").

Given the lack of any cognizable irreparable harm to the Defendants, the significant ongoing and irreparable harm to Hypertherm, and Hypertherm's interests in protecting its intellectual property, the balance of harms tips sharply in Hypertherm's favor. Equity requires that Defendants be ordered to permanently cease their unlawful conduct.

### 4. Issuance of a Permanent Injunction Is in the Public Interest

Public policy favors protection of the right secured by valid patents. *Cobraco Mfg. Co. v. Valley View Spec. Co.*, No. 90 C 0284, 1990 U.S. Dist. LEXIS 10958, at *8 (N.D. Ill. Jan. 19, 1990). Additionally, "the public interest nearly always weighs in favor of protecting property rights in the absence of countervailing factors, especially when the patentee practices his invention" such as here. *Apple Inc. v. Samsung Elec's Co.*, 809 F.3d 633, 647 (Fed. Cir. 2015) (citations omitted). An injunction would further the public's confidence in the patent and judicial system and provide incentives for inventors and corporations to continue developing innovative products and patenting new ideas without the fear of invincible, foreign infringers. The public interest would also be served by removing Defaulting Defendants' inferior products from the market. For these reasons, an injunction against Defaulting Defendants is warranted and in the public interest.

### F. Hypertherm is Entitled to a Continuing Asset Freeze and an Asset Release to Satisfy its Damages Judgment.

As discussed above, Hypertherm suffered lost profit damages of $3,453,406.20 USD. However, the total amount of funds frozen in the Defaulting Defendants' accounts falls far short of this amount, totaling just over $100,000. Dyer Decl. ¶¶ 8, 17-18. Accordingly, Plaintiff requests

14

that the U.S.-based financial accounts for the Defaulting Defendants that owe damages to Hypertherm—including all funds held by Amazon and eBay and any other U.S. based financial institution on behalf of the Defaulting Defendants—remain frozen until such time as each Defaulting Defendant satisfies the judgment against it by paying the damages awarded to Hypertherm. In the absence of such relief, Defaulting Defendants will likely attempt to transfer assets from U.S.-based financial institutions to offshore accounts. It is critical, therefore, that each Defaulting Defendant's assets remain restrained until full payment of damages has been made. Finally, Hypertherm also requests that the Court order that all funds up to the amount of the awarded damages currently restrained in Defaulting Defendants' financial accounts be released to Hypertherm as partial payment of the above-identified damages. While the release of these funds will not fully compensate Hypertherm, such a release is necessary and equitable given the extent of infringement by the Defaulting Defendants and their refusal to participate in these proceedings.

## IV. CONCLUSION

For the reasons set forth above, Hypertherm respectfully requests the Court grant the present Motion, enter the requested default judgment against the Defaulting Defendants and enter an order granting the relief set forth in the Proposed Order submitted concurrently herewith.

DATED this 15th day of October, 2024.

Respectfully submitted,

By */s/ Collin D. Hansen*

| | |
|---|---|
| Collin D. Hansen (ARDC: 6335991) | Brian N. Platt (UT# 17099) |
| Email: chansen@wnlaw.com | Email: bplatt@wnlaw.com |
| **WORKMAN NYDEGGER** | **WORKMAN NYDEGGER** |
| 840 S Northwest Hwy, Suite 10 | 60 East South Temple, Suite 1000 |
| Barrington, IL 60010 | Salt Lake City, UT 84111 |
| (815) 353-4438 (Telephone) | (801) 533-9800 (Telephone) |

*Attorneys for Hypertherm, Inc.*

15

**CERTIFICATE OF SERVICE**

I hereby certify that on October 15, 2024 I caused to be filed with the Clerk of the Court the foregoing **MEMORANDUM IN SUPPORT OF MOTION FOR ENTRY OF DEFAULT JUDGMENT** using the CM/ECF system, which will send a notice of electronic filing to all counsel of record, and that I will cause to be sent an email to the addresses of Defendants' counsel and/or the addresses provided for Defendants by third parties attaching the foregoing.

By */s/ Collin D. Hansen*
Collin D. Hansen